UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RICARDO DE OLIVEIRA,<br>    Petitioner,<br><br>    v.<br><br>DAVID T. WESLING, *Field Office*<br>*Director of Enforcement and Removal*<br>*Operations, Boston Field Office, I.C.E.*;<br>MARKWAYNE MULLIN, *Secretary,*<br>*U.S. Department of Homeland*<br>*Security*; TODD BLANCHE, *Acting*<br>*U.S. Attorney General*; EXECUTIVE<br>OFFICE FOR IMMIGRATION<br>REVIEW; MICHAEL NESSINGER,<br>*Warden of Wyatt Detention Facility*;<br>and U.S. DEPARTMENT OF<br>HOMELAND SECURITY,<br>    Respondents. | No. 26-cv-308-JJM-AEM |

MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Ricardo de Oliveira brings this habeas petition under 28 U.S.C. § 2241, claiming that Immigration and Customs Enforcement ("ICE") is unlawfully detaining him at the Donald W. Wyatt Detention Facility (the "Wyatt") in Central Falls, Rhode Island. ECF No. 1. The Government has responded to Mr. de Oliveira's petition and argues that it should be denied because there is an *in absentia* removal order entered against him, thereby making him subject to mandatory detention under 8 U.S.C. § 1231(a). ECF No. 11 at 1.

The Court disagrees and finds that Mr. de Oliveira is not subject to an administratively final order of removal and that his detention is instead governed by 8 U.S.C. § 1226(a). As explained in more detail below, the Court therefore GRANTS Mr. de Oliveira's habeas petition and ORDERS his immediate release. The Government shall provide Mr. de Oliveira with a bond hearing and is permitted to set minimal release conditions that will reasonably assure his appearance at the bond hearing.

## I.    BACKGROUND

### A.    Statutory and Regulatory Framework

Starting with the basics, the Government's power to detain a noncitizen must be grounded in a specific provision of the Immigration and Nationality Act ("INA"). *See, e.g., Gonzalez Lopez v. Wesling*, No. 26-cv-047-JJM-AEM, --- F. Supp. 3d ----, 2026 WL 309607, at *1 (D.R.I. Feb. 5, 2026); *accord Hechavarria v. Sessions*, 891 F.3d 49, 54 (2d Cir. 2018). Two statutory provisions, 8 U.S.C. § 1226(a) and 8 U.S.C. § 1231(a), generally authorize the Department of Homeland Security ("DHS") to detain noncitizens either before or after they are ordered removed from the United States.

Determining which provision of the INA governs is significant, because "[w]here [a noncitizen] falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008).

### 1.    Detention Under Section 1226(a)

Under 8 U.S.C. § 1226(a), the Government may detain certain noncitizens "already in the country" during the pendency of their removal proceedings. *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Section 1226(a) is often called the "discretionary detention statute" because it permits—but does not require—the Government to arrest and detain a noncitizen "[o]n a warrant issued by the Attorney General," or their designees, "pending a decision on whether the [noncitizen] is to be removed from the United States." *Guerrero Orellana v. Moniz*, 802 F. Supp. 3d 297, 304 (D. Mass. 2025).

An ICE officer "makes the initial determination" as to whether to detain a noncitizen under this provision. *Hernandez-Lara v. Lyons*, 10 F.4th 19, 26 (1st Cir. 2021) (citing 8 C.F.R. § 236.1(c)(8)). If the officer opts for continued detention, then the noncitizen has a Fifth Amendment Due Process right to seek review of that decision at a bond hearing (also known as a "custody redetermination hearing") before an immigration judge ("IJ"). *Id.* at 41. At that hearing, the Government bears the burden of proving either: (1) "by clear and convincing evidence that [the noncitizen] poses a danger to the community"; or (2) "by a preponderance of the evidence that [the noncitizen] poses a flight risk." *Id.*

### 2.    Detention Under Section 1231(a)

By contrast, Section 1231(a) of the INA authorizes DHS to detain noncitizens who have been "ordered removed" from the United States. *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 575 (2022) (quoting 8 U.S.C. § 1231(a)). "After the entry of a

3

final order of removal against a noncitizen, the Government generally must secure the noncitizen's removal during a 90-day 'removal period.'" *Id.* at 578 (quoting 8 U.S.C. § 1231(a)(1)(A)).

The "removal period" begins on the latest of three dates: (1) "[t]he date the order of removal becomes administratively final," (2) "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order," and (3) "if the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement." 8 U.S.C. § 1231(a)(1)(B). Noncitizens are subject to mandatory detention during this 90-day removal period. *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(2)).

Following the expiration of the removal period, the Government "may" detain only four categories of noncitizens: "(1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" *Arteaga-Martinez*, 596 U.S. at 578-79 (quoting 8 U.S.C. § 1231(a)(6)).

### 3.    The Statutory Right to File a Motion to Reopen

This case also centers on a noncitizen's statutory right to file a motion to reopen and the protections that come with such a right. In 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), which codified the right of every noncitizen ordered removed to file a "motion to reopen" their removal

proceedings. *See Dada v. Mukasey*, 554 U.S. 1, 4-5 (2008) (citing 8 U.S.C. § 1229a(c)(7)). "A motion to reopen is a form of procedural relief that asks the Board [of Immigrational Appeals] ["BIA"] to change its decision in light of newly discovered evidence or a change in circumstances since the hearing." *Id.* at 12 (internal quotations and citations omitted). "The motion to reopen is an 'important safeguard' intended 'to ensure a proper and lawful disposition' of immigration proceedings." *Kucana v. Holder*, 558 U.S. 233, 242 (2010) (quoting *Dada*, 554 U.S. at 18).

### a.    *In Absentia* Removal Orders

One ground for filing a motion to reopen is if an *in absentia* removal order is entered against the noncitizen. *See Aragon-Munoz v. Mukasey*, 520 F.3d 82, 85 (1st Cir. 2008). A noncitizen's "failure to appear at a scheduled immigration hearing results in mandatory entry of an *in absentia* removal order if the government establishes that written notice of the hearing was given and that the [noncitizen] is removable as charged." *Id.* (citing 8 U.S.C. § 1229a(b)(5)(A)). However, "an *in absentia* order may be rescinded at any time if the [noncitizen] demonstrates that he did not receive notice of the hearing." *Id.* at 86 (citing 8 U.S.C. § 1229a(b)(5)(C)(ii)).

### b.    Automatic Stay of Removal

Generally speaking, a stay is defined as "[t]he postponement or halting of a proceeding, judgment, or the like" and "[a]n order to suspend all or part of a judicial proceeding or a judgment resulting from that proceeding." *Stay*, Black's Law Dictionary (11th ed. 2019). In the immigration context, a stay of a removal order has the effect of "suspend[ing] . . . the removal order" and returning things to the "status

quo—the state of affairs before the removal order was entered." *Nken v. Holder*, 556 U.S. 418, 429 & n.1 (2009).

Section 1229a contains several automatic stay of removal provisions. *See, e.g.*, 8 U.S.C. § 1229a(b)(5)(C), (c)(7)(C)(iv). As relevant here, a noncitizen who files a motion to reopen on grounds of inadequate notice of an *in absentia* removal order is entitled to an automatic stay of their removal proceedings "pending disposition of the motion by the immigration judge." 8 U.S.C. § 1229a(b)(5)(C).

## B.   Factual and Procedural History

Mr. de Oliveira is a citizen of Brazil. ECF No. 1 at 3. He entered the United States without inspection on or about May 12, 2019. *Id.*; *see also* ECF No. 1-3 at 3. However, a U.S. Border Patrol ("USBP") agent apprehended Mr. de Oliveira at or near El Paso, Texas and arrested him shortly thereafter. ECF No. 4 at 2; *see also* ECF No. 4-2 at 2.

He was served with a Notice to Appear ("NTA") and charged with being removable under 8 U.S.C. § 1182(a)(6)(A)(i).[1] ECF No. 1-3 at 3 (displaying Mr. de Oliveira's NTA). Notably, the NTA did not list a date or time for his removal hearing and merely instructed Mr. de Oliveira to appear in Boston Immigration Court "on a date to be set" and "at a time to be set." *Id.*

Mr. de Oliveira did not remain in detention long. On May 13, 2019, another USBP agent served Mr. de Oliveira with a Notice of Custody Determination, and DHS

---

[1] This provision of the INA renders a noncitizen removable if they are "present in the United States without being admitted or paroled." *López-Pérez v. Garland*, 26 F.4th 104, 109 (1st Cir. 2022) (quoting 8 U.S.C. § 1182(a)(6)(A)(i)).

released him from custody on his own recognizance pursuant to Section 1226(a).  ECF No. 1 at 3; *see also* ECF No. 1-3 at 6 (displaying Mr. de Oliveira's Notice of Custody Determination).

DHS later filed Mr. de Oliveira's NTA with the Boston Immigration Court to initiate removal proceedings against him.  ECF No. 4 at 3; ECF No. 4-2 at 3.  When Mr. de Oliveira did not appear for a removal hearing scheduled for May 22, 2024, the Immigration Court stated that it would be administratively closing his case "until such time as [Mr. de Oliveira] can be located."  ECF No. 7-1 at 3.  Mr. de Oliveira claims that he never received notice of this hearing because it was mailed to his friend's address in Charlestown, Massachusetts, rather than his own address in Hudson, Massachusetts.  ECF No. 7 at 3.

More than a year later, the Boston Immigration Court re-calendared Mr. de Oliveira's removal hearing.  ECF No. 4-2 at 3.  Mr. de Oliveira claims that he did not receive notice of this hearing either because it was sent to the same Charlestown address.  ECF No. 7 at 3.  The removal hearing took place on April 14, 2026, and, when Mr. de Oliveira did not appear, an IJ ordered him removed *in absentia* to Brazil.  ECF No. 7-1 at 10-11 (displaying Mr. de Oliveira's *in absentia* removal order).

On May 7, 2026, Mr. de Oliveira appeared in Marlborough District Court in Marlborough, Massachusetts for a hearing stemming from a vehicle inspection-sticker violation.  ECF No. 1 at 1; ECF No. 4-2 at 3.  After the hearing, ICE officers arrested and detained Mr. de Oliveira, and it is at this time that he claims he learned

of the *in absentia* removal order entered against him.  ECF No. 1 at 1.  He was later transferred to the Wyatt in Central Falls, Rhode Island.  *Id.* at 3.

On May 13, 2026, Mr. de Oliveira filed a timely motion with the Boston Immigration Court to rescind his *in absentia* order of removal and reopen his removal proceedings.  ECF No. 1 at 1; *see also* ECF No. 7-1 at 12-33.  He primarily argued that his removal order should be rescinded because he lacked notice of the removal hearing.  ECF No. 1 at 4.  He also contended that he was entitled to an automatic stay of his removal proceedings.  *Id.*

Just a few days later, on May 15, 2026, Mr. de Oliveira filed the present habeas petition, arguing that his detention is unlawful.  *Id.* at 9.  As is customary with habeas petitions, the Court entered an Order that directed ICE not to move Mr. de Oliveira from the District of Rhode Island without providing the Court with at least 72-hours advance notice of the move and the reason therefor.  ECF No. 2 at 1.

In a subsequent notice, the Government informed the Court that an IJ had denied Mr. de Oliveira's Motion to Reopen on June 8, 2026.  ECF No. 8 at 1; *see also* ECF No. 8-1 at 1-9 (displaying the IJ's order).  According to the Government, Mr. de Oliveira's automatic stay expired when the IJ issued his decision.  ECF No. 8 at 1.  As such, the Government has requested that the Court lift its Order restricting Mr. de Oliveira's transfer from the District of Rhode Island so that ICE may effectuate his removal to Brazil.  ECF No. 8 at 2.

Mr. de Oliveira in turn filed an opposition to the Government's request, arguing that its "request is premature."  ECF No. 9 at 1.  He asserted that his order

of removal is not sufficiently "final" because he still has the ability to appeal the IJ's denial of his motion to reopen to the BIA and request "a stay of removal in connection with that appeal." *Id.* at 2. Indeed, in a recent status report, Mr. de Oliveira told the Court that he timely appealed the IJ's decision to the BIA. ECF No. 10 at 1; *see also* ECF No. 10-1 at 2, 4 (confirming Mr. de Oliveira's BIA appeal). As of this writing, a decision on Mr. de Oliveira's appeal has yet to be rendered by the BIA.

One final development. On July 15, 2026, the Government submitted another notice, asserting that Mr. de Oliveira is still subject to detention under Section 1231(a). ECF No. 11 at 1-2. However, the Government acknowledges that the 90-day period since the IJ entered Mr. de Oliveira's *in absentia* removal order has elapsed. *Id.* at 1. Thus, according to the Government, Mr. de Oliveira "was detained under § 1231(a)(2) until July 14, 2026," and the authority underlying his detention has now "switched to § 1231(a)(6)." *Id.*

## II.    DISCUSSION

### A.    Jurisdiction

Before reaching the merits of Mr. de Oliveira's petition, the Court must first assure itself of its jurisdiction. There seems to be some agreement between the parties that, with this habeas petition, Mr. de Oliveira is challenging his detention rather than the underlying merits of his immigration case. ECF No. 4 at 6 ("The Government reads the Petition in this case as challenging [Mr. de Oliveira's] confinement, rather than challenging the merits of [his] immigration case."); ECF No. 7 at 8-9 ("[Mr. de Oliveira] does not challenge the merits of his immigration case

in this Court. [He] challenges his detention—his physical liberty—which is squarely within this Court's habeas jurisdiction under 28 U.S.C. § 2241.").

The Government nevertheless points out that 8 U.S.C. § 1252 makes it so that "challenge[s] to a final order of removal may be maintained only in a federal Court of Appeals." ECF No. 4 at 6 (citing *Bustillo v. Immigr. & Naturalization Serv.*, No. Civ. A. 06-63S, 2006 WL 1495579, at *2 (D.R.I. May 25, 2006)). The Government can rest assured that this is not the type of challenge that Mr. de Oliveira brings here.

It is true that, under 8 U.S.C. § 1252(b)(9), judicial review of a noncitizen's removal order is "vested exclusively in the courts of appeals." *Aguilar v. U.S. Immigr. & Customs Enf't*, 510 F.3d 1, 9 (1st Cir. 2007). However, it is also true that "noncitizens may pursue habeas challenges to the legality of their detention because they are independent of removal proceedings and, thus, not barred by 8 U.S.C. § 1252(b)(9)." *Cruz v. Bondi*, No. 25-cv-262-JJM-PAS, 2025 WL 3295485, at *5 (D.R.I. Nov. 26, 2025) (citing *Aguilar*, 510 F.3d at 11). Mr. de Oliveira brings the latter type of challenge.

The Government raises an additional jurisdictional argument, which is that "8 U.S.C. § 1252(a)(2)(B) prohibits challenges to the Government's discretionary decision to continue detention." ECF No. 4 at 6. That provision of the INA states that "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under [8 U.S.C. §§ 1151-1378] to be in the discretion of the Attorney General or the Secretary of Homeland Security[.]" 8 U.S.C. § 1252(a)(2)(B)(ii). Thus,

according to the Government, Mr. de Oliveira "cannot challenge ICE's discretionary decision to detain [him]." ECF No. 4 at 7.

Of course, that is not what Mr. de Oliveira is doing here either. As the Supreme Court recognized more than twenty-five years ago, there is a difference between "seek[ing] review of [DHS's] exercise of discretion" and "challeng[ing] the extent of [DHS's] authority under the post-removal-period detention statute." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001). "And the extent of that authority is not a matter of discretion." *Id.* Here, Mr. de Oliveira brings a statutory challenge to his continued detention and that is a challenge that "remain[s] available" to him under 28 U.S.C. § 2241. *Id.* Assured of its jurisdiction over Mr. de Oliveira's petition, the Court may now turn to the merits.

### B.    The Merits

Federal courts have the authority to grant writs of habeas corpus to individuals in custody if such custody is in "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). As such, the relevant question is whether Mr. de Oliveira's detention is authorized by Section 1231(a).

To detain a noncitizen under this provision, recall that the noncitizen must be "ordered removed." *Arteaga-Martinez*, 596 U.S. at 575. Once the noncitizen is "ordered removed," the clock starts ticking for DHS and the noncitizen must be removed from the United States within the 90-day "removal period." *Id.* at 578. There are certain circumstances, however, under which the 90-day removal period— and, by extension, the applicability of Section 1231(a)—may be postponed. *See, e.g.,*

11

*D'Ambrosio v. McDonald*, 793 F. Supp. 3d 271, 276 (D. Mass. 2025); *Mavungo-Raymond v. Nessinger*, No. 26-cv-013-JJM-AEM, 2026 WL 161358, at *6 (D.R.I. Jan. 21, 2026).

As mentioned, Section 1231(a) provides that "[t]he removal period begins on the latest of the following":

(i) *The date the order of removal becomes administratively final.*

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order.

(iii) If the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B) (emphasis added). The key dispute here is over whether Mr. de Oliveira is subject to an "administratively final" removal order for the purposes of Section 1231(a). *See* ECF No. 4 at 4-5; ECF No. 7 at 4-5.

In the ordinary course, the 90-day removal period would have commenced for Mr. de Oliveira once the *in absentia* removal order was entered against him on April 14, 2026. *See* ECF No. 7-1 at 10-11. However, that removal order was later stayed upon Mr. de Oliveira's filing of his motion to reopen his removal proceedings with the Boston Immigration Court on May 13, 2026. ECF No. 1 at 1; *see* 8 U.S.C. § 1229a(b)(5)(C).

In the detention context, this is significant because "[t]he statutory stay and the possibility of further review at the [BIA] impact the authority under which [Mr. de Oliveira] can be detained." *Valladares v. Hyde*, No. 1:25-cv-13271-IT, 2025 WL 3719643, at *3 (D. Mass. Dec. 23, 2025); *see also D'Ambrosio*, 793 F. Supp. 3d at 276

12

("If a removal order has been stayed, then 'the individual subject to the order is not within any "removal period.""" (quoting *Reid v. Donelan*, 64 F. Supp. 3d 271, 276-77 (D. Mass. 2014))).

The Government nevertheless contends that Mr. de Oliveira's automatic stay of removal has expired because, as of June 8, 2026, an IJ has denied his motion to reopen. ECF No. 8 at 1 ("The stay on remov[al] expired when the [immigration court] issued that decision[.]"); *see* ECF No. 8-1 at 1-9. The Government cites a DHS regulation, *see* ECF No. 8 at 1, which states, in pertinent part, that "[t]he filing of a motion [to reopen] shall stay the removal of the [noncitizen] pending disposition of the motion by the [IJ]." 8 C.F.R. § 1003.23(b)(4)(ii). As such, because an IJ has denied Mr. de Oliveira's motion, the Government asserts that the "bar on [his] removal has dissolved," and it now can "effectuate [his] final order of removal." ECF No. 8 at 1.

Not so fast, says Mr. de Oliveira. He argues that the decision on his motion to reopen is not "administratively final" because he still can appeal that decision to the BIA. ECF No. 9 at 1. In addition, he has stated that he intends to ask the BIA for "a stay of removal in connection with that appeal." *Id.* at 2. As of July 7, 2026, Mr. de Oliveira has timely filed that appeal with the BIA. ECF No. 10 at 1; *see also* ECF No. 10-1 at 2, 4.

Mr. de Oliveira has the better of the argument. There are a few cases dealing directly with Mr. de Oliveira's exact circumstances. Most prominently, in *Cui v. Garland*, 13 F.4th 991 (9th Cir. 2021), the Ninth Circuit considered the question of finality when applied to an *in absentia* removal order. There, the court held that this

type of "removal order 'become[s] final upon the earlier of (i) a determination by the [BIA] affirming such order; or (ii) the expiration of the period in which the [noncitizen] is permitted to seek review of such order by the [BIA].'" *Cui*, 13 F.4th at 996 (quoting 8 U.S.C. § 1101(a)(47)(B)).

The Ninth Circuit also noted that *in absentia* removal orders, unlike general removal orders, "may not be appealed to the BIA without first filing a motion to reopen the order before the IJ within 180 days of the order." *Id.* (citing 8 U.S.C. § 1229a(b)(5)(C)(i)); *see In re Guzman-Arguera*, 22 I&N Dec. 722, 723 (BIA 1999) (holding that the BIA "is without authority to consider a direct appeal from an in absentia order" and that a noncitizen seeking to challenge such an order must "file a motion to reopen before the [IJ]" and "exhaust[ ] this avenue of relief" before filing an appeal with the BIA). Thus, the court reasoned that removal orders issued *in absentia* become "final at the end of the 180-day period" if no motion to reopen is filed or after BIA review. *Id.*

In accordance with *Cui*, several district courts have recognized that a noncitizen's *in absentia* removal order is not final for the purposes of Section 1231(a) while an appeal of the IJ's denial of the motion to reopen is still pending with the BIA. *See, e.g.*, *Bonilla v. Hermosillo*, No. 2:25-cv-02196, 2025 WL 3237854, at *3 (W.D. Wash. Nov. 19, 2025); *E.G.M. v. Scott*, No. C26-0744-KKE, 2026 WL 914803, at *3 (W.D. Wash. Apr. 3, 2026); *Li v. Albarran*, No. 1:26-cv-00980-DAD-EFB, 2026 WL 970529, at *4 (E.D. Cal. Apr. 10, 2026).

The Court finds those decisions to be persuasive. In this case, because his motion to reopen his removal proceedings is currently pending before the BIA, Mr. de Oliveira's *in absentia* removal order is not administratively final. *See Cui*, 13 F.4th at 996. Therefore, if "[t]he removal period begins on the *latest* of" three occasions, including the administrative finality of the removal order, *see* 8 U.S.C. § 1231(a)(1)(B) (emphasis added), and where, as here, Mr. de Oliveira is not subject to an administratively final removal order, then it follows that Section 1231(a) is not applicable to Mr. de Oliveira's particular circumstances. *See Li*, 2026 WL 970529, at *4 (finding that, while a noncitizen petitioner had a pending BIA appeal of a motion to reopen, the petitioner was "not subject to a final order of removal . . . for purposes of . . . mandatory detention during the removal period pursuant to § 1231(a)(2)"); *Bonilla*, 2025 WL 3237854, at *3 ("[Petitioner] and his family filed a timely notice of appeal of the IJ's denial of their motion [to reopen]. That appeal is pending before the BIA. Accordingly, [Petitioner's] removal order issued *in absentia* is not final.").

To sum up, a condition precedent of the Government's ability to detain a noncitizen under Section 1231(a) is that the noncitizen must be subject to an administratively final order of removal. *See* 8 U.S.C. § 1231(a)(1)(B). This detention provision does not apply to Mr. de Oliveira currently because he is not subject to an administratively final removal order while his motion to reopen is pending with the BIA. *See, e.g.*, *Cui*, 13 F.4th at 996; *Li*, 2026 WL 970529, at *4; *Bonilla*, 2025 WL 3237854, at *3.

15

Because the Government does not allege that he is subject to any other detention provision of the INA, the Court therefore finds that Mr. de Oliveira's detention is instead governed by Section 1226(a). *Cf. Mavungo-Raymond*, 2026 WL 161358, at *8 (finding that, where the Government could not establish that a noncitizen was subject to detention under Section 1231(a), the noncitizen's "detention was properly governed by 8 U.S.C. § 1226(a)" instead); *Valladares v. Hyde*, No. 1:25-cv-13271-IT, 2025 WL 3719643, at *3 (D. Mass. Dec. 23, 2025) (same); *Gonzalez Lopez*, 2026 WL 309607, at *6 (same).

The Court's conclusion is buttressed by the fact that, in 2019, DHS released Mr. de Oliveira from ICE custody on his own recognizance pursuant to Section 1226(a). *See* ECF No. 1-3 at 6. In his Notice of Custody Determination, DHS observed that Mr. de Oliveira should be released "*pending a final administrative determination*" in his case. *Id.* (emphasis added); *see also Li*, 2026 WL 970529, at *4 (holding that a noncitizen was not subject to Section 1231(a) while his appeal of an IJ's denial of his motion to reopen was pending before the BIA and instead finding him "subject to discretionary detention pursuant to § 1226(a) because he was previously released on his own recognizance pursuant to § 1226(a)"). Of course, that "final administrative determination" has yet to occur here.

The Court will also order a bond hearing in this case. Mr. de Oliveira correctly points out that, "[a]s a person detained under § 1226(a), [he] is entitled to a custody redetermination hearing with the procedural protections established in *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021)." ECF No. 7 at 8. Accordingly, the

16

Government will bear the burden of demonstrating to an IJ that Mr. de Oliveira should be detained, either by proving by clear and convincing evidence that he poses a danger to the community or by proving by a preponderance of the evidence that he poses a flight risk. *See Hernandez-Lara*, 10 F.4th at 41.

Finally, as it has done in other cases involving individuals detained under Section 1226(a), the Court will order the immediate release of Mr. de Oliveira while he awaits his bond hearing. *See Mavungo-Raymond*, 2026 WL 161358, at *9 (ordering similar relief); *Gonzalez Lopez*, 2026 WL 309607, at *7 (same).

## III.    CONCLUSION

For the reasons stated, the Court GRANTS Mr. de Oliveira's habeas petition. ECF No. 1.  The Court also DENIES the Government's request to vacate its previous Order restricting Mr. de Oliveira's transfer from the District of Rhode Island.  ECF No. 8.

The Government is hereby ORDERED to **release Ricardo de Oliveira immediately**. The Court further ORDERS the Government to provide Mr. de Oliveira with a bond hearing before an IJ under 8 U.S.C. § 1226(a) within ten (10) days of the date of this Order.

The Government is permitted to transfer Mr. de Oliveira to ICE's Boston Field Office in Burlington, Massachusetts to process his release, allow for any return of property, and set minimal release conditions that will reasonably assure his appearance at the bond hearing.  However, effectuating this transfer shall not in any way impede Mr. de Oliveira's **immediate release**.

17

Finally, the Court ORDERS the Government to file a status report within five (5) days of Mr. de Oliveira's bond hearing, stating whether he has been granted bond. If Mr. de Oliveira's request for bond is denied, the Government shall state the reason for that denial and whether Mr. de Oliveira has been re-detained by ICE.

IT IS SO ORDERED.

*s/John J. McConnell, Jr.*

_____
JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court

July 17, 2026